IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FARMERS INSURANCE COMPANY
OF ARIZONA,

      Plaintiff,

vs.                                  Civ. No. 14-01119 JAP/WPL

LEODEGARIO RODRIGUEZ,
SOUTHEASTERN CASH REGISTER &
EQUIPMENT, INC., and LIBERTY
MUTUAL INSURANCE, ROBERT D.
NUÑEZ and HELEN MONTAÑO, as
Personal Representatives of the ESTATE OF
ROBERT B. NUÑEZ, JR., deceased,

      Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

This federal action for declaratory judgment arises from an ongoing lawsuit filed in

New Mexico's Fifth Judicial District Court.  In that state court case, Plaintiff Farmers Insurance

Company of Arizona (FICA) is currently defending Leodegario Rodriguez, its insurance policy

holder.  Because FICA believes its policy does not oblige it to defend Defendant Rodriguez in

the underlying suit, FICA seeks declarations of non-liability as to all parties involved in the

underlying suit.  *See* AMENDED COMPLAINT BY FARMERS INSURANCE COMPANY OF

ARIZONA FOR DECLARATION OF RIGHTS UNDER INSURANCE POLICY (Doc. No. 7)

(Amended Complaint), filed February 20, 2015.

On April 7, 2015, Defendants Robert D. Nuñez and Helen Montaño (Defendants in this

suit; plaintiffs in the underlying state suit) filed a MOTION TO DISMISS AMENDED

COMPLAINT BY FARMERS INSURANCE COMPANY OF ARIZONA (Doc. No. 11)

(Motion to Dismiss).  Defendants argue that the Court should dismiss this federal lawsuit for lack

1

of Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1) because FICA has failed to meet the amount in controversy requirement of $75,000 in 28 U.S.C. § 1332(a).  Alternatively, Defendants argue that the Court should exercise its judicial discretion to dismiss this federal action in order to avoid infringing on the parallel state court action.

On April 21, 2015, FICA filed PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT (Doc. No. 12) (Response). Because Defendants did not file a Reply within fourteen calendar days after service of the Response, the Court assumes that Defendants' Motion to Dismiss is fully briefed.  *See* D.N.M. LR-Civ. 7.4(a). For the following reasons, the Court will deny Defendants' Motion to Dismiss.

**Background**

From August 4, 2013 to February 4, 2014, Plaintiff FICA insured Defendant Rodriguez's 1991 Chevrolet truck under a standard six month automobile liability insurance policy (Doc. No. 7-1) (Policy). This Policy covered an insured's liability for bodily injuries of up to $50,000 per person. On September 26, 2013, Rodriguez collided with a motorcycle while driving his employer's 2003 Ford F-150 truck.  The motorcyclist, Robert B. Nuñez, Jr., died as a result of the collision. On February 27, 2014, the personal representatives of the deceased's Estate, Robert D. Nuñez and Helen Montaño, filed a state lawsuit against Rodriguez; Rodriguez's employer, Southeastern Cash Register and Equipment, Inc. (SCRE); and Martin Torrez, the owner of SCRE and the F-150 truck involved in the collision.  The Estate's claims include negligence, wrongful death, personal injury, and punitive damages.

Because the collision occurred within the six month period of Rodriguez's Policy with FICA, Rodriguez made demand under the Policy for defense and indemnification in the underlying suit. Amended Complaint ¶ 11.  FICA agreed to defend Rodriguez in the underlying

suit, but under a reservation of rights.  In a letter dated March 31, 2014 (Doc. No. 7-2), FICA

notified Rodriguez that the circumstances of the September 26, 2013 collision may not be

covered by Rodriguez's Policy.  FICA explained that Rodriguez was not driving his 1991

Chevrolet truck covered under the Policy, but instead, a vehicle furnished or available for his

regular use—which is not covered under the Policy.  On December 1, 2014, in a second letter to

Rodriguez (Doc. No. 7-2), FICA reiterated its contention that the Policy did not cover liability

for injuries in the collision at issue.[1]

   Defendant SCRE held an insurance policy with Colorado Casualty Insurance Company

(Colorado Casualty) on the date of the collision.[2]  Colorado Casualty thus became another

Defendant because it insured SCRE.  On October 15, 2014, Colorado Casualty tendered all

liability and obligations of defense and indemnification of SCRE to FICA (Doc. No. 7-2).  On

December 1, 2014, FICA advised Colorado Casualty that FICA rejected Colorado Casualty's

tender of obligations (Doc. No. 7-2).

**Motion to Dismiss under Rule 12(b)(1)**

*I. Legal Standard*

   A federal district court has subject-matter jurisdiction if the parties to the lawsuit are

completely diverse and if the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)

(2011).  A 12(b)(1) motion is a challenge to the Court's subject matter jurisdiction.  *See* Fed. R.

Civ. P. 12(b)(1).  A defendant must assert this defense by motion as a preliminary matter, before

filing a responsive pleading to the complaint. Fed. R. Civ. P. 12(b).

---

[1] Thus, FICA cleared its way to investigate the claims against Rodriguez and also to defend Rodriguez in the underlying suit; nonetheless FICA reserved the right not to indemnify Rodriguez for any liability.

[2] Colorado Casualty has also been referred to as Liberty Mutual Insurance.  On June 1, 2015, the new attorney for Colorado Casualty confirmed that it, not Liberty Mutual, is the actual party.  *See* ENTRY OF APPEARANCE (Doc. No. 14).

"When a plaintiff invokes federal-court jurisdiction," rather than removing a state court action in its capacity as defendant, "the plaintiff's amount-in-controversy allegation is accepted if made in good faith." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547 (2014).

"In a declaratory judgment action, the amount in controversy is measured by the value of the object of the litigation." *City of Moore, Okla. v. Atchison, Topeka, & Santa Fe Ry. Co.*, 699 F.2d 507, 509 (10th Cir. 1983) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 42 U.S. 333, 347 (1977)). In other words, the amount in controversy is "an estimate of the amount that will be put at issue in the course of the litigation." *McPhail v. Deere & Co.*, 529 F.3d 947 (10th Cir. 2008). The "object" or "course" of litigation could refer to either the federal action or the underlying state action, if there is one. In a federal court action, the amount-in-controversy must be calculated "exclusive of interest or costs." § 1332(a); *see Farmers Ins. Co. v. McClain*, 603 F.2d 821, 823 (10th Cir. 1979) ("The phrase . . . obviously refers to interest or costs which might be awarded in connection with the federal diversity proceeding . . . . [These] possible interests or costs . . . in connection with the federal action should not be considered."). But in a state court case, the amount at issue depends upon an insurance company's contractual obligations to its insured under a policy. *See Farmers Ins. Co. v. McClain*, 603 F.2d 821, 823 (10th Cir. 1979) (acknowledging that "costs incurred, or incurrable, [sic] in state proceedings may be considered as a part of the amount in controversy in a federal proceeding"); *see also Viking Ins. Co. of Wis. v. Morris*, No. 09–cv–02547–CMA–MEH, 2010 WL 1644578, at *5 n.9 (D. Colo. Apr. 22, 2010) (same). Therefore in a state court case, it is permissible to include costs when calculating the amount-in-controversy to establish federal diversity jurisdiction. 12 James Wm. Moore et al., Moore's Federal Practice § 57.21[3][b][ii] (3d ed. 2015).

There is a high bar to dismissal of a federal case for failing to meet the amount-in-controversy requirement.  To justify dismissal, "it must appear to a legal certainty that the claim is really for less than [$75,000]."  *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998).

If the insurance policy provides not only for payment of damages up to the stated policy limit, but also for defense costs and expenses in an underlying lawsuit, then those costs are included in calculating the amount in controversy.  *McClain*, 603 F.2d at 823; *Century Sur. Co. v. J. Quinn Const.*, No. 09–cv–006085–DDP–JEMX, 2010 WL 330246, at *4 (C.D. Cal. Jan. 20, 2010).

Beyond the complaint itself, parties may introduce interrogatories, affidavits, contracts, and proposed settlement offers as evidence to establish the amount in controversy.  *McPhail*, 529 F.3d at 956.

## II. Discussion

FICA seeks a declaration that it is not obligated to defend or indemnify any of the Defendants in the underlying suit.   The Policy FICA issued to Defendant Rodriguez covered the use of a "private passenger car" or "utility car," but FICA maintains that a Ford F-150 truck does not fit into either category as defined by the Policy. Amended Complaint ¶ 9.  Furthermore, the Policy excludes coverage for punitive damages and for bodily injury arising out of vehicle use in the course of an insured's employment.  *Id.* Thus, FICA alleges, it is not obligated to defend or to indemnify any Defendants because the Policy does not cover the facts of the underlying suit.  *Id.* ¶ 11.

Defendants move to dismiss on the ground that Plaintiff's Amended Complaint fails to set out a good faith allegation that the amount-in-controversy exceeds $75,000.  Defendants

contend, "Plaintiff has pled no facts to establish why a dispute over a $50,000 liability policy would exceed the amount in controversy requirement of $75,000." Motion to Dismiss ¶ 3. It is true that FICA does not allege the amount at issue in its Amended Complaint, but this is not fatal for two reasons. [3] First, under liberal pleading rules, FICA is not required to do so. Under Fed. R. Civ. P. 8(a)(1), a plaintiff only needs to include in the complaint "a short and plain statement of the grounds for the court's jurisdiction," which "need not contain evidentiary submissions." *Dart Cherokee Basin*, 135 S. Ct. at 551. Second and foremost, Defendants have a heavy burden of showing the case should be dismissed for failing to meet the amount in controversy. Dismissal is warranted "from the face of the pleadings" only if "it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed." *St. Paul Mercury*, 303 U.S. at 289. In other words, Defendants must prove that it is certain that the claim will not exceed $75,000. Otherwise the Court accepts a plaintiff's amount-in-controversy allegation if it is made in good faith. *Dart Cherokee Basin*, 135 S. Ct. at 553; *St. Paul Mercury,* 303 U.S. at 288.

    FICA responds that the costs of defense, when added to the $50,000 limit of liability, will equal more than $75,000. Response at 2. Adding the costs of defense to the limit of liability is a valid calculation because the Policy obligates FICA to pay both: the Policy reads, "[i]n addition to our limit of liability, we will pay these benefits as respects an injured person: 1. All costs we incur in the . . . defense of any suit." Policy at 8. Therefore, FICA may potentially be responsible for all costs incurred in the defense of Rodriguez in the state lawsuit in addition to the $50,000 limit of liability, which could valuate the object of the underlying suit at more than $75,000. *See McClain*, 603 F.2d at 823 (holding that an insurance company's obligations are not

---

[3] Plaintiff's Amended Complaint alleges no specific amount in controversy; nor does it even cite 28 U.S.C. § 1332, the federal diversity statute. But the Court views the Amended Complaint as satisfying the pleadings requirements of Fed. R. Civ. P. 8 and the evidence requirements of *Dart Cherokee Basin*, which are both minimalistic.

capped at stated policy limit, but also include defense expenses as well as all costs that may be assessed against the insured).

Defendants contend that "with no evidence to support the amount of defense costs, this claim is speculative and not sufficient to meet the amount in controversy requirement." Motion to Dismiss ¶ 4. However, it is Defendants' obligation to prove to a legal certainty that FICA will not satisfy the required amount in controversy. Pointing out that FICA has not shown it has incurred more than $25,000 in defense costs is not the same as proving to a legal certainty that FICA will ultimately spend less than $25,000 in defending the case. Defendants submit no argument or evidence of their own to show why FICA, to a legal certainty, will not be able to meet its good-faith allegation of there being more than $75,000 in controversy.

Furthermore, FICA provides two documents as evidence that the amount at issue in the underlying claim will exceed $75,000. The first document is the AFFIDAVIT OF ANN DODD (Doc. No. 12-1) (Affidavit). Ann Dodd is FICA's insurance adjuster for the Rodriguez claim. Ms. Dodd testifies that to date, FICA has expended $10,621.78 in attorney's fees and costs in the underlying suit, and that FICA anticipates spending over $25,000 to defend the underlying suit. Affidavit ¶¶ 3, 5. FICA notes that since Ms. Dodd stated the expenses at the time of her affidavit, seven expert depositions have been scheduled, three of which are out of state. Response at 2. It is reasonable to expect that additional defense costs will be more than $9,479.23, resulting in a total amount of potential liability insurance plus defense costs exceeding $75,000. *See Miera*, 143 F.3d at 1340 (speculating on future costs and fees to reach the amount-in-controversy requirement, given the realities of modern law practice).

The second document is a settlement offer for two million dollars presented in the state suit on behalf of the Estate of Robert B. Nuñez, Jr. (Doc. No. 12-2). A proposed settlement offer

can be used as evidence to establish the amount in controversy.  *McPhail*, 529 F.3d at 956.

Defendants' offer to settle for $2,000,000 in the underlying state suit is far above the federal

jurisdictional limit and negates Defendants' argument that not more than $75,000 is in

controversy.

### Abstention

*I. Legal Standard*

Federal district courts have "unique and substantial discretion in deciding whether to

declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  The Tenth

Circuit Court of Appeals reviews a district court's decision to hear or decline a declaratory

judgment suit for abuse of discretion. *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983

(10th Cir. 1994).

Hearing a declaratory action in federal court has the potential to interfere with an ongoing

underlying state suit.  In deciding whether or not to hear a declaratory action, the Court can

consider five "*Mhoon*" factors:

> [1] [W]hether a declaratory action would settle the controversy; [2]
> whether it would serve a useful purpose in clarifying the legal
> relations at issue; [3] whether the declaratory remedy is being used
> merely for . . . "procedural fencing" or "to provide an arena for a
> race to res judicata"; [4] whether use of a declaratory action would
> increase friction between our federal and state courts and
> improperly encroach upon state jurisdiction; and [5] whether there
> is an alternative remedy which is better or more effective.

31 F.3d at 983.  These factors are meant to indicate the degree of similarity between the

federal declaratory action and the underlying state court proceedings.  *U.S. v. City of Las*

*Cruces*, 289 F.3d 1170, 1183 (10th Cir. 2002).  If the federal and state claims are parallel,

then the Court risks a duplicative and uneconomical ruling and may choose to dismiss the

federal court case. *Mid-Continent Cas. Co. v. Village at Deer Creek Homeowners Ass'n*,

685 F.3d 977, 982 (10th Cir. 2012). If the claims are not parallel and do not significantly

overlap, then the Court may hear the declaratory action in its discretion, as it is a forum

available to the party seeking a declaration of rights. *Mhoon*, 31 F.3d at 984. State and

federal proceedings generally are not parallel if they involve different issues, remedies,

and proof requirements, even if they depend on the same facts. 17A James Wm. Moore

et al., Moore's Federal Practice § 122.93[1] (3d ed. 2015).

In addition to its five factors, *Mhoon* also states that a court may consider whether

there is a "live need for a declaration of [the insurance company's] rights and duties,"

noting "that there is a substantial interest in deciding these issues without undue delay,

particularly the question of the duty to defend . . . . since the duty to defend and coverage

issues would remain to be decided in light of the outcome of the state case." 31 F.3d at

984.

## II. Discussion

The issues in the underlying state court action against Defendant Rodriguez are

negligence and wrongful death, whereas this case involves interpretation of the insurance policy

FICA issued to Defendant Rodriguez. Therefore, the state and federal proceedings are not

parallel. Analysis of the five *Mhoon* factors confirms this conclusion. As to factors one and two,

the declaratory action would settle the controversy of whether FICA must defend and indemnify

Rodriguez in the underlying state suit, thereby clarifying the legal relations. As to factor three,

Defendants do not contend that FICA filed the federal suit as a matter of procedural fencing.

As to factor four, there is little risk that a declaratory judgment in FICA's favor would

encroach on the state court's jurisdiction over Defendants' personal injury and wrongful death

claims against Defendant Rodriguez. Rodriguez's rights under his insurance policy with FICA

have no bearing on whether he is or is not liable to Defendants in the underlying state court tort action.  True, insurance coverage is a matter of state law, and state courts are presumably better placed to rule on questions of state law.  *See, e.g.*, *Mid-Continent Cas. Co.*, 685 F.3d at 986.  On the other hand, as plaintiff, FICA's choice of federal forum over state forum is given considerable weight. *E.g.*, *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992).

As to factor five, Defendants do not suggest a reason why resolving FICA's insurance policy obligations to Rodriguez in state court would be better or more effective than deciding them in this Court.  Defendants simply point out that a separate Farmers Insurance entity, Farmers Insurance Exchange (FIE), has intervened in the state court case and has sought a declaration of its obligation to others than Rodriguez under a different insurance policy. Motion to Dismiss ¶ 8.  Declarations of each insurance company's rights and obligations to different insureds under the different insurance policies would be separate and distinct, not piecemeal litigation of the same issue.

Because the weight of the *Mhoon* factors are in Plaintiff's favor, and because there is a substantial interest in deciding Plaintiff's duty to defend in the underlying suit without substantial delay, the Court will not refuse to hear this lawsuit as a matter of discretion.

## Conclusion

Defendants have not proved to a legal certainty that the amount in controversy will not exceed $75,000.  FICA's declaratory judgment action does not interfere with the underlying state suit and the Court, in its discretion, will not dismiss this federal court action.

IT IS ORDERED that Defendants' MOTION TO DISMISS AMENDED COMPLAINT

BY FARMERS INSURANCE COMPANY OF ARIZONA (Doc. No. 11) is denied.

SENIOR UNITED STATES DISTRICT JUDGE